# CASE NO. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### NEXPOINT ADVISORS, L.P. and
### HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.,

A͟ᴘᴘᴇʟʟᴀɴᴛ

v.

### HIGHLAND CAPITAL MANAGEMENT, L.P.

A͟ᴘᴘᴇʟʟᴇᴇ

Oɴ Aᴘᴘᴇᴀʟ ғʀᴏᴍ ᴛʜᴇ Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Bᴀɴᴋʀᴜᴘᴛᴄʏ Cᴏᴜʀᴛ
ғᴏʀ ᴛʜᴇ Nᴏʀᴛʜᴇʀɴ Dɪsᴛʀɪᴄᴛ ᴏғ Tᴇxᴀs, Dᴀʟʟᴀs Dɪᴠɪsɪᴏɴ
Bᴀɴᴋʀᴜᴘᴛᴄʏ Cᴀsᴇ Nᴏ. 19-34054 (SGJ11)

Aᴘᴘᴇᴀʟ Pᴇɴᴅɪɴɢ ᴀs Cɪᴠɪʟ Aᴄᴛɪᴏɴ Nᴏ. 3:23-ᴄᴠ-00573 ɪɴ ᴛʜᴇ Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs
Dɪsᴛʀɪᴄᴛ Cᴏᴜʀᴛ ғᴏʀ ᴛʜᴇ Nᴏʀᴛʜᴇʀɴ Dɪsᴛʀɪᴄᴛ ᴏғ Tᴇxᴀs, Dᴀʟʟᴀs Dɪᴠɪsɪᴏɴ

### PETITION FOR PERMISSION TO APPEAL
### (DIRECT APPEAL FROM BANKRUPTCY COURT, 28 U.S.C. § 158(d))

MUNSCH HARDT KOPF & HARR, P.C.

Davor Rukavina
Texas Bar No. 24030781
500 North Akard Street
Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com

ATTORNEYS FOR THE APPELLANTS

i

# **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. **Appellants:**

    **NexPoint Advisors, L.P.**
    **Highland Capital Management Fund Advisors, L.P. n/k/a**
    **NexPoint Asset Management, L.P.[1]**

    Counsel for the Appellant:
    MUNSCH HARDT KOPF & HARR, P.C.
    Davor Rukavina
    500 North Akard Street, Suite 3800
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

2. **Appellee:**

    **Highland Capital Management, L.P.**

    Counsel for Appellee:
    PACHULSKI STANG ZIEHL & JONES LLP
    Jeffrey N. Pomerantz
    John A. Morris
    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067
    Telephone: (310) 277-6910

---

[1] Highland Capital Management Fund Advisors, L.P. recently changed its name to NexPoint Asset Management, L.P., but otherwise remains the same entity. For ease, the Appellants have not changed the style of this Petition from the proceedings and orders below, but advise the Court of this name change in order that the Court can properly direct the Appellants how to proceed in light of the name change.

ii

Facsimile: (310) 201-0760

-- and –

HAYWARD PLLC
Melissa S. Hayward
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Facsimile: (972) 755-7110

                                                 /s/ Davor Rukavina
                                                 Davor Rukavina, Esq.
                                                 Counsel for the Appellants

# PETITION FOR PERMISSION TO APPEAL
# (DIRECT APPEAL FROM BANKRUPTCY COURT 28 U.S.C. § 158(d))

NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. n/k/a NexPoint Asset Management, L.P. (the "Petitioners" or the "Appellants"), respectfully request that the Court grant them permission to appeal the Plan Conforming Order (defined below), entered by the Bankruptcy Court upon remand from this Court, directly to this Court pursuant to Federal Rule of Appellate Procedure 5 and 28 U.S.C. § 158(d)(2)(A).

## I. PROCEDURAL BACKGROUND

### A. THE ORIGINAL CONFIRMATION ORDER

This is an appeal after remand of an order of the Bankruptcy Court confirming a Chapter 11 plan on "cramdown" over the objection of the Appellant and various others.

On February 22, 2021, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered that certain *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified); and (ii) Granting Related Relief* (the "Confirmation Order"), by which the Bankruptcy Court confirmed the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [docket no.

1

1808], as further modified (the "Plan"), filed by Highland Capital Management, L.P. (the "Debtor").

A true and correct copy of the Confirmation Order, which includes the Plan as an original part thereof, is attached hereto as Exhibit "A."

The Debtor filed its voluntary Chapter 11 bankruptcy case (the "Bankruptcy Case") on October 16, 2019. The Debtor was a multi-billion dollar global investment advisor and manager of various funds, and is a registered investment advisor under the Investment Advisers Act of 1940. *See* Confirmation Order at p. 6. Among other assets that the Debtor manages is more than $1 billion invested by third parties in collateral loan obligation investment vehicles (the "CLOs"). *See id*. The CLOs own the underlying assets, usually securities, and the Debtor manages those assets for the CLOs, including by making decisions as to when to sell CLO assets, pursuant to a series of portfolio management agreements between the Debtor and the CLOs. *See id*.

The Plan is a wind down and liquidation plan. The Plan bifurcates the estate into two entities: (i) a claimant trust is created for the benefit of creditors (and potentially for the benefit of equity interest holders), which trust is vested with most assets of the estate, including causes of action, *see id*. at pp. 5-6; and (ii) the Debtor is reorganized and retains various business assets, including its management rights of the CLOs. *See id*. The claimant trust will own the reorganized Debtor. *See id*.

The reorganized Debtor will liquidate and wind-down its assets in approximately two (2) years after confirmation, during which time it will continue to manage the CLOs and various other investments that it holds or manages. *See id*. at p. 47. This is significant because the Debtor will continue in business postconfirmation, which implicates two aspects of the Plan that are directly relevant to this Petition.

First, the Plan originally (prior to remand) contained a broad exculpation provision exculpating the Debtor, its professionals, its general partner, and that partner's board members, among many others, from any claims for negligence. *See* Exhibit "A" at Plan pp. 47-48. This exculpation extended not only to case administration matters, but also to ordinary business matters and also to post-confirmation matters related to the implementation of the Plan. *See id*. The Appellants objected to the Plan's exculpation provisions because the Appellants themselves are registered advisors who advise many publicly traded funds and other investment vehicles, some of which funds own interests in the CLOs or otherwise have their assets managed by the Debtor. Thus, the Appellants wished to ensure that the Plan did not impermissibly exculpate persons from, among other things, any potential claims related to how they managed the CLOs or other investments.

The Appellants objected to the exculpation provisions of the Plan because those provisions effectuate prohibited third releases (*i.e.* claims by a non-debtor against a non-debtor) in violation of this Court's precedent in *In re Pacific Lumber*

*Co.*, 584 F.3d 229, 253 (5th Cir. 2009). *Pacific Lumber* permitted the exculpation of the members of a creditor's committee for actions taken in the bankruptcy case, but it prohibited the exculpation of other persons or professionals. *See id*. at 253. As discussed below, the Appellants substantially prevailed on this argument in the first appeal of the Confirmation Order to this Court.

Second, the Plan contains a permanent "gatekeeper injunction" directly prohibiting the Appellants by name from commencing or pursuing any claim or cause of action against various protected persons, unless the Bankruptcy Court—purporting to exercise "sole and exclusive" jurisdiction—first determines, after notice and a hearing, that such claim or cause of action is "colorable." *See id*. at pp. 50-51. The Appellants objected to any such injunction for postconfirmation matters because the effect of the gatekeeper injunction was to grant a *de facto* exculpation in violation of the Bankruptcy Code and *Pacific Lumber* and because the Bankruptcy Court would have no postconfirmation jurisdiction to determine whether a claim or cause of action is "colorable." *See In re Craig's Stores of Tex. Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). Should the Appellants wish to pursue an action arising after confirmation, and the Bankruptcy Court finds that the claim is not "colorable," that means that a court without jurisdiction will have forever decided and prohibited the bringing of the claim.

The Bankruptcy Court rejected these arguments, finding that the Debtor and others needed special protections from alleged vexatious litigation in the form of the "gatekeeper" injunction and other Plan injunction provisions, without which the Debtor would not be able to obtain post-confirmation D&O insurance. *See* Confirmation Order at pp. 57-59.

### B. THIS COURT'S ORIGINAL OPINION

The Appellants and others appealed the Confirmation Order which, after the Bankruptcy Court certified that appeal for a direct appeal to this Court, and this Court granted a petition for direct appeal, proceeded in this Court as Case No. 21-10449 (the "First Appeal").

On August 19, 2022, in the First Appeal, this Court issued its opinion and judgment affirming in part and reversing in part the Confirmation Order with respect to the scope of the Plan's exculpation provisions. Following a motion for rehearing filed by various of the appellants, this Court withdrew its original opinion and entered a subsequent opinion in the First Appeal on September 7, 2022, remanding to the Bankruptcy Court for further proceedings in accordance with the opinion (the "Original Opinion"). A true and correct copy of the Original Opinion is attached hereto as Exhibit "B."

The Original Opinion replaced only one sentence in the prior opinion: "[t]he injunction and gatekeeper provisions are, on the other hand, perfectly lawful" was

replaced with: "[w]e now turn to the Plan's injunction and gatekeeper provisions." Exhibit H at p. 4. The Appellants believed this change to be very significant, in that this Court deleted the prior reference to the gatekeeper injunction being "perfectly lawful."

On September 12, 2022, this Court issued its *Judgment* in the First Appeal (the "Mandate"), a true and correct copy of which is attached hereto as Exhibit "C." The Mandate has not been recalled or stayed, the Court denying various appellants' motion for the same.[2]

By the Original Opinion, this Court concluded that the Plan and Confirmation Order violated 11 U.S.C. § 524(e) and *Pacific Lumber* because the exculpation provisions exceeded the permissible scope and effectuated non-debtor releases in violation of the Bankruptcy Code. *See* Exhibit B at p. 30. This Court vacated the Plan's exculpation provisions with respect to all exculpated parties except for the Debtor, the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case and its members, and the independent directors of the Debtor's general partner for conduct within the scope of their duties. *See id*. This Court then remanded the

---

[2] Both the Appellants and the Debtor filed petitions for certiorari with the United States Supreme Court. As of this filing, and while the Supreme Court has requested responsive briefing, the Supreme Court has not decided whether it would grant review.

matter to the Bankruptcy Court for further proceedings consistent with the Original Opinion.

The Appellants additionally read the Original Opinion and Mandate as reversing the Bankruptcy Court's gatekeeper injunction, as discussed below, although whether this Court did so was disputed.[3] That is the primary issue on this Appeal.

C. POST-REMAND PROCEEDINGS

On September 9, 2022, the Debtor filed its *Motion to Conform Plan* (the "Motion to Conform"). A true and correct copy of the Motion to Conform is attached hereto as Exhibit "D." By the Motion to Conform, the Debtor sought an order from the Bankruptcy Court conforming the Confirmation Order to the Original Opinion, arguing that the only change to the Confirmation Order that was necessary was to change the definition of "Exculpated Parties" in the Plan to only the following: "collectively, (i) the Debtor, (ii) the Independent Directors, (iii) the Committee, and (iv) the members of the Committee (in their official capacities)." Exhibit "D" at p. 4.

---

[3] It was for more clarity on the issue of the gatekeeper injunction that the Appellant sought a rehearing which, as noted above, this Court granted. While the Appellants believed that the Court's opinion on rehearing confirmed that the Court was reversing the Bankruptcy Court on the gatekeeper injunction, this too was disputed and, as discussed below, rejected by the Bankruptcy Court.

Certain parties labeled as the "Funds" (as that term was used in the Original Opinion) filed an objection to the Motion to Conform, a true and correct copy of which is attached as Exhibit "E." This objection argued that the Confirmation Order and Plan should be conformed not only to limit the scope of the persons protected by the exculpation provision but that the persons protected by the gatekeeper injunction must be similarly limited in order to comply with the Original Opinion and Mandate; *i.e.* that the gatekeeper injunction could extend only to the same persons protected by the exculpation provision. Otherwise, the Plan would do through the gatekeeper injunction what this Court had held it could not do through the exculpation provision.

On September 30, 2022, the Appellants filed their *Limited Objection of the Advisors to Motion to Conform Plan* (the "Objection"). A true and correct copy of the Objection is attached as Exhibit "F." By the Objection, the Appellants joined in the aforementioned objection filed by the funds. The Appellants argued that the Original Opinion did more than strike only the offending provisions of the Plan's exculpation provision, but also that it struck similarly offending provisions in the gatekeeper injunction by, among other things, holding that "the Plan violates § 524(e) . . . insofar as it exculpates *and enjoins* certain non-debtors." Exhibit B at p. 30 (emphasis added). The Appellants argued that this Court confirmed their view in

the Original Opinion when it struck, on rehearing, the prior provision regarding the gatekeeper injunction being "perfectly lawful."

The Appellants also argued that a different provision of the Plan must be struck to conform the Plan to the Original Opinion, that being Article IX of the Plan which applied the Plan's injunctive provisions to successors, including the "Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property." Exhibit F at p. 3. Finally, the Appellants argued that the Plan should have been conformed to also exclude from the gatekeeper injunction those suits expressly authorized by 28 U.S.C. § 959(a), which provides that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). Thus, the Appellants argued that the gatekeeper injunction could not enjoin the bringing of actions expressly permitted by this federal statute.

On October 14, 2022, the Debtor filed its *Reply in Support of Motion to Conform Plan*, a true and correct copy of which is attached as Exhibit "G," in which the Debtor reasserted its argument in the Motion to Conform that no further changes to the Plan and the Confirmation Order were necessitated by this Court's Original Opinion, other than changing the definition of "Exculpated Parties." The Debtor argued that the relief requested by the Appellants in the Objection was inappropriate

and that the sole relief provided in the Original Opinion was to remove certain persons from the scope of the Plan's exculpation provisions.

On February 27, 2023, the Bankruptcy Court entered its *Memorandum Opinion and Order on Reorganized Debtor's Motion to Conform Plan* (the "Plan Conforming Order"). A true and correct copy of the Plan Conforming Order is attached hereto as Exhibit "H." By the Plan Conforming Order, the Bankruptcy Court rejected the Appellants' arguments and conformed the Plan solely with the Debtor's proposed change to the definition of Exculpated Parties, "[t]he court grants the *Motion* and orders that one change be made to the Plan to conform it to the mandate of the Fifth Circuit: revise the definition of "Exculpated Parties" as proposed in the *Motion* and no more. Exhibit H at p. 19.

D.   **THE CERTIFICATION ORDER**

The Appellants believed that the Bankruptcy Court erred with respect to the Plan Conforming Order by not conforming the Plan's gatekeeper injunction, as it had the Plan's exculpation provisions.

On March 13, 2022, the Appellants timely filed their *Joint Notice of Appeal*, a true and correct copy of which is attached as Exhibit "I," by which the Appellants appealed the Plan Conforming Order to the United States District Court for the Northern District of Texas (the "District Court"), where the Appeal is presently

pending as Civil Action Number: 3:23-cv-00573-E (the "District Court Proceeding").

On March 22, 2023, the Appellants and the Debtor filed their *Joint Motion for Certification of Direct Appeal to the Fifth Circuit of Order on Reorganized Debtor's Motion to Conform Plan*, a true and correct copy of which is attached as Exhibit "J," agreeing that a certification for direct appeal to this Court was proper "because a direct appeal will materially advance the progress of the case or proceeding." Exhibit J at p. 2.

On March 28, 2023, the Bankruptcy Court entered its *Order Certifying Direct Appeal to the Fifth Circuit Court of Appeals of Order on Reorganized Debtor's Motion to Conform Plan* (the "Certification Order"). A true and correct copy of the Certification Order is attached hereto as Exhibit "K." By the Certification Order, the Bankruptcy Court certified the Appeal for a direct appeal to this Court pursuant to 28 U.S.C. § 158(d)(2)(A)(iii) "because the direct appeal may materially advance the progress of the case or proceeding in which the Appeal is taken." Exhibit K at p. 2.

**E.    THE ISSUES ON APPEAL**

The issues that the Appellants have raised in this Appeal are as follows:

1.    Whether the Bankruptcy Court erred as a matter of law, and in violation of this Court's Original Opinion and Mandate, when it failed on remand to order

that, in addition to revising the definition of "Exculpated Parties" in the Plan, the definition of "Protected Parties" in the Plan (applicable to the gatekeeper injunction) should also be revised to include only "(i) the Debtor, (ii) the Independent Directors, (iii) the Committee, and (iv) members of the Committee (in their official capacities)" (each as defined in the Plan).

2. Whether the Bankruptcy Court erred as a matter of law, and in violation of this Court's Original Opinion and Mandate, when it failed on remand to order the revision of the Plan to remove the Plan's provision conferring limited qualified immunity on the Debtor's successors (the third paragraph of Article IX.F of the Plan).

3. Whether the Bankruptcy Court erred as a matter of law, and in violation of this Court's Original Opinion and Mandate, when it failed on remand to order the revision of the gatekeeper provisions (the fourth paragraph of Article IX.F of the Plan) to remove from its scope suits and claims expressly permitted by federal statute to be brought against a trustee or debtor-in-possession.

## II. RELIEF REQUESTED

The Appellants respectfully petition this Court to grant permission for the Appeal to be heard directly by this Court, bypassing the District Court, as provided for by 28 U.S.C. § 158(d)(2). That section:

> was enacted to provide for direct review of bankruptcy court judgments, orders, or decrees by the applicable court of appeals in cases where the bankruptcy court or the district court certify that there is no controlling decision from the Supreme Court or circuit court, the case involves a matter of public importance, there are conflicting precedents, or an immediate appeal may materially advance the progress of the bankruptcy proceeding.

*In re OCA, Inc.*, 552 F.3d 413, 418 (5th Cir. 2008) (citing 28 U.S.C. § 158(d)(2)(A)(i)-(iii)).

"The two primary goals behind this provision are (i) to provide quicker and less costly means of resolving significant issues that are inevitably bound for the court of appeals, and (ii) to facilitate the development of more binding precedents in bankruptcy law." *In re Qimonda AG,* 470 B.R. 374, 382-83 (E.D.Va. 2012) (citing H.R. Rep. No. 109-31(7) at 148 (2005), as *reprinted in* 2005 U.S.L.L.A.N. 88, 206).

In the event that the Bankruptcy Court or the District Court makes the certification under 28 U.S.C. § 158(d)(2), this Court has jurisdiction if it authorizes the direct appeal. *Id.* As set forth in the Certification Order, the Bankruptcy Court determined that the Appeal meets the requirements for direct appeal because an immediate appeal may materially advance the progress of the case or the proceeding in which the Appeal is taken.

### III. <u>DISCUSSION</u>

The ultimate issue in this Appeal is whether the Bankruptcy Court properly conformed the Plan to comply with this Court's Original Opinion and Mandate. It

goes without saying that no court is in a better position than this Court to construe and apply its Original Opinion.

The governing statute provides as follows:

The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—

(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. 158(d)(2)(A). This Petition is timely under Federal Rule of Bankruptcy Procedure 8007(g).

Permission to appeal directly to this Court should be granted because, as agreed to by the Debtor and as certified by the Bankruptcy Court, a direct appeal will materially advance the progress of the case or proceeding in which the Appeal is pending, within the meaning of section 158(d)(2)(A)(iii).

With respect to materially advancing the progress of the case, all parties have stated that they intend to appeal any ruling of the District Court, thus ensuring that this Court will consider this Appeal anyway. The Bankruptcy Court certified the Appeal on this basis. Insofar as this Court will almost certainly be presented with the same Appeal eventually, the Appellants submit that it is in everyone's best interests to proceed with a direct appeal, as the parties will save significant fees and costs, upwards of one year of delay will be avoided, the Bankruptcy Case will move toward finality,[4] and the District Court will be spared being called upon to adjudicate an appeal that will be further appealed to this Court, thus promoting judicial economy.

The Appellants will add that this Appeal also raises an issue of "public importance" and, while there is controlling precedent from this Court in the form of the Original Opinion, the Appellants submits that this Court should clarify and enforce the Original Opinion with respect to the gatekeeper injunction that is involved.

At present, the Appellants are under a final injunction limiting their access to the courts and to seek legal redress to protect themselves and their clients, or to advise their clients to do so, even as the Debtor manages (or managed) billions of

---

[4] Of importance to all creditors and parties-in-interest affected by the Plan, and especially by its payment and injunction provisions.

dollars of investments that subjected the Debtor to a large number of contractual, statutory, and fiduciary duties and obligations. Limiting one's access to the federal courts to enforce federal law, especially when that limitation is issued by an Article I court with questionable jurisdiction, at best, is a most serious matter that merits this Court's prompt review.

## IV.   PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellants respectfully request that the Court, pursuant to 28 U.S.C. § 158(d), permit the Appeal to proceed directly in this Court.

RESPECTFULLY SUBMITTED this 26th day of April, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
500 North Akard Street, Suite 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com

**ATTORNEYS FOR THE APPELLANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 26th day of April, 2023, he caused true and correct copies of this document, with all exhibits attached hereto, to be served by e-mail on the following parties through their respective counsel of record:

Appellee:
    Highland Capital Management, L.P.:

        Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
        John A. Morris (jmorris@pszjlaw.com)

        /s/ Davor Rukavina
        Davor Rukavina, Esq.

## CERTIFICATION OF WORD COUNT

The undersigned hereby certifies that this Petition complies with Rule 5(c) because it contains 3,519 words, excepting those portions that may be excepted.

        /s/ Davor Rukavina
        Davor Rukavina, Esq.

4871-4603-7087v.2 019717.00001